No. 2022-1253

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

LKQ CORP. & KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,

*Appellants*,

v.

GM GLOBAL TECHNOLOGY OPERATIONS LLC,

*Appellee*.

*Appeal from the United States Patent and Trademark Office*
*Patent Trial and Appeal Board in PGR2020-00055*
*(JJ Ken B. Barrett, Scott A. Daniels, and Robert L. Kinder)*

**MOTION BY AUTOMOTIVE BODY PARTS ASSOCIATION FOR LEAVE TO FILE AMICUS CURIAE BRIEF IN SUPPORT OF APPELLANTS**

Pursuant to Federal Circuit Rule 29(a)(3), Automotive Body Parts Association (ABPA) respectfully moves the Court for leave to file the accompanying Amicus Curiae Brief. The brief is being filed in support of the petition for rehearing en banc, and with the consent of LKQ Corp, and Keystone Automotive Industries, Inc.

ABPA is a coalition dedicated to serving the collision repair industry with quality replacement parts. There are more than 160 Members of the ABPA, occupying more than 400 separate collision parts distribution, bumper sales,

recycling facilities, and manufacturing plants. Collectively, ABPA Members are responsible for distributing more than 90% of independently produced aftermarket collision replacement parts sold to the collision repair trade.

ABPA believes this brief will be helpful to the Court to explain the impact of this Court's decision on consumers and the automotive repair parts supply chain in the United States, and how the decision is inconsistent with long-standing principles of design patent invention, obviousness, and the Supreme Court opinion in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007).

/s/ Robert G. Oake, Jr.
Robert G. Oake, Jr.
Oake Law Office, PLLC
700 S. Central Expressway, Suite 400
Allen, Texas 75013
Telephone: 214.207.9066
Facsimile: 469.519.5454
rgo@oake.com

Attorney for Amicus Curiae
Automotive Body Parts Association

April 6, 2023

No. 2022-1253

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

LKQ CORP. & KEYSTONE AUTOMOTIVE INDUSTRIES, INC.,

*Appellants*,

v.

GM GLOBAL TECHNOLOGY OPERATIONS LLC,

*Appellee*.

*Appeal from the United States Patent and Trademark Office*
*Patent Trial and Appeal Board in PGR2020-00055*
*(JJ Ken B. Barrett, Scott A. Daniels, and Robert L. Kinder)*

**<u>BRIEF OF AUTOMOTIVE BODY PARTS ASSOCIATION</u>**
**<u>AS AMICUS CURIAE IN SUPPORT OF APPELLANTS</u>**

Robert G. Oake, Jr.
Oake Law Office, PLLC
700 S. Central Expressway, Suite 400
Allen, Texas 75013
Telephone: 214.207.9066
Facsimile: 469.519.5454
rgo@oake.com

Attorney for Amicus Curiae
Automotive Body Parts Association

April 6, 2023

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2022-1253 |
| **Short Case Caption** | LKQ Corporation, et al v. GM Global Technology Operatior |
| **Filing Party/Entity** | Amicus Curiae Automotive Body Parts Association |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/06/2023

Signature: /s/ Robert G. Oake, Jr.

Name: Robert G. Oake, Jr.

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Automotive Body Parts Association | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| Robert G. Oake, Jr.<br>Oake Law Office, PLLC | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)    ☐ No    ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# **TABLE OF CONTENTS**

Page

CERTIFICATE OF INTEREST

TABLE OF CONTENTS   …………………………………………   i

TABLE OF AUTHORITIES   ………………………………………   ii

INTEREST OF AMICUS CURIAE   ……………………………….   1

SUMMARY OF ARGUMENT …………………………………….   2

ARGUMENT   …………………………………………………   4

1.  Background and Development of Obviousness Standard  ….   4

2.  Lessons from *Egyptian Goddess v. Swisa*   ………………..   9

3.  The *Rosen* Primary Reference Requirement Should be
    Eliminated  ………………………………………………   10

CONCLUSION   ……………………………………………….   12

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                                    <u>Page(s)</u>

*Columbus Plastic Products, Inc. v. Rona Plastic Corp.,*
 111 F. Supp. 623 (D.N.Y. 1953) ……………………………… 5

*Egyptian Goddess, Inc. v. Swisa, Inc.,*
 543 F.3d 665 (Fed Cir. 2008) (en banc)  ………………… 9, 10

*Graham v. John Deere Co. of Kansas City,*
 383 U.S. 1 (1966) …………………………………………… 5

*Gorham v. White,*
 81 U.S. 511 (1871)…………………………………………… 9, 10

*In re Jennings,*
 182 F.2d 207 (C.C.P.A. 1950)  ……………………… 5, 8

*In re Johnson,*
 175 F.2d 791 (C.C.P.A. 1949)  ……………………… 4

*In re Nalbandian,*
 661 F.2d 1214 (C.C.P.A. 1981) …………………………….. 8

*In re Rosen,*
 673 F.2d 388 (C.C.P.A. 1982)  ……..………………… 1, 8, 11, 12

*Knapp v. Will & Baumer,*
 273 F. 380 (2nd Cir. 1921)  ……………………………… 6

*KSR Int'l Co. v. Teleflex Inc.,*
 550 U.S. 398 (2007)  …………………………………….. 1, 11, 11

*Litton Systems v. Whirlpool Corporation,*
 728 F.2d 1423 (Fed. Cir. 1984) ……………………………… 9

*Smith v. Whitman Saddle,*
 148 U.S. 674 (1893)  …………………………………….. 6, 11

TABLE OF AUTHORITIES (CONTINUED)

<u>Page(s)</u>

*W. Auto Supply Co. v. Am.-National Co.*,
    114 F.2d 71 (6th Cir. 1940) ………………………………… 7

STATUTES AND RULES

35 U.S.C. § 103 …………………………………………………… 5

35 U.S.C. § 171 …………………………………………………… 5

F.R.A.P. 29(a)(4)(E) ……………………………………………… 2

## INTEREST OF THE AMICUS CURIAE

The Automotive Body Parts Association (ABPA) is a coalition dedicated to serving the collision repair industry with quality replacement parts. There are more than 160 Members of the ABPA, occupying more than 400 separate collision parts distribution, bumper sales, recycling facilities, and manufacturing plants. Collectively, ABPA Members are responsible for distributing more than 90% of independently produced aftermarket collision replacement parts sold to the collision repair trade.

In ABPA's view, the "basically the same" primary reference requirement from *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982) is an overly rigid rule that is inconsistent with long-standing principles of design patent invention, obviousness, and the Supreme Court opinion in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007). A primary reference, while sometimes helpful in determining obviousness in the design patent context, should not be required when analyzing the obviousness of claimed designs because its strict application fails to capture some designs that are obvious when proper legal principles are applied.

When patents are allowed on automotive part designs that should be considered obvious, it harms consumers and poses a significant risk to the automotive repair parts supply chain in the United States. Consumers rely on automotive parts to repair their vehicles and bring them to pre-accident condition.

1

Allowing patents on obvious designs leads to higher motor vehicle repair costs due to lack of competition to the Original Equipment Manufacturers. Additionally, consumers face higher automotive insurance costs due to more expensive parts pricing as well as a significant time delay in getting their vehicles repaired due to fewer options in the supply chain.

Pursuant to F.R.A.P 29(a)(4)(E), counsel for amicus curiae states that no counsel for any party authored this brief in whole or in part, and no party or counsel for a party made any monetary contribution intended to fund the preparation or submission of this brief. No person other than amici curiae, their members, or their counsel made any monetary contribution to the brief's preparation or submission.

## SUMMARY OF ARGUMENT

Determining whether a design has an inventive quality or is nonobviousness over the prior art always has presented a challenge. New designs typically are composed of old design elements such as lines, angles, and shapes that are arranged in a new way. The difficulty is in determining whether the new arrangement is nonobvious considering the prior art and what the prior art teaches a designer of ordinary skill.

Two general principles are important when analyzing obviousness. First, the claimed and prior art designs (and what the prior art teaches) must be compared with each other as a whole. Second, hindsight bias must be avoided. It is improper to use

the claimed design as a roadmap to cobble together individual pieces of prior art to form the claimed design. These two principles sometimes can be hard to follow. A design is made up of individual elements and the impulse to consider them individually, rather than as a unified whole, can be considerable. Further, once the claimed design is observed, it can be difficult not to let the image influence what is considered nonobvious over the prior art.

A practical concept developed to help ensure these two general principles are followed is the primary reference requirement. A primary reference is a prior art design reference that is both "in existence" and "basically the same" as the claimed design. Under current law, the obviousness inquiry cannot proceed without a primary reference. The primary reference requirement ensures that the claimed design is compared against the prior art designs as a whole and that the claimed design is not rendered obvious merely by cobbling together independent pieces of prior art where no suggestion or teaching exists to bring them together.

A problem, however, is that in attempting to solve two problems, the primary reference requirement has created a much larger problem. This larger problem is that designs that should be considered obvious under proper rules may not be considered obvious when a primary reference is required. The current low threshold to patentability is contrary to the purpose of patent law, which is promote the progress of science and useful arts. The solution to this larger problem is to eliminate the strict

need for a primary reference, further develop the concept of what the prior art teaches a designer of ordinary skill, and in appropriate circumstances, to allow the prior art to provide an implicit teaching for obviousness.

ARGUMENT

1.    Background and Development of Obviousness Standard

Early design patent statutes included the term "invention," which was interpreted as requiring an inventive quality for patentability. Early cases were candid about the difficulty of establishing a specific rule for invention but nonetheless contained helpful general principles to consider. In *In re Johnson*, 175 F.2d 791 (C.C.P.A. 1949), the court stated '[t]he courts seem to be of one accord in stating that the fourth element of the formula which tests the patentability of a design, viz., the exercise of the inventive faculty, defies definition and resides as a subjective standard in the mind of the judge considered as an "average observer." *Id.* The court continued "[w]hile patentable designs may result from regrouping familiar forms and decorations, the substitution of a slightly different form already in use in articles of the class to which the design is applied, does not merit a monopoly [citation omitted] [and] [t]he degree of difference required to establish novelty occurs when the average observer takes the new design for a different, and not a modified already-existing, design." *Id.*

In *In re Jennings*, 182 F.2d 207 (C.C.P.A. 1950), the court addressed the two important "as a whole" and hindsight principles discussed above and stated "[i]n considering patentability of a proposed design the appearance of the design must be viewed as a whole, as shown by the drawing, or drawings, and compared with something in existence - not with something that might be brought into existence by selecting individual features from prior art and combining them, particularly where combining them would require modification of every individual feature, as would be required here." *Id.* The court did not address how close the "something in existence" had to be to the claimed design and did not require it to be "basically the same" as the claimed design.

The 1952 Patent Act set forth design patent requirements in 35 U.S.C. § 171 and codified the requirement for non-obviousness in 35 U.S.C. § 103. These statutes did not substantially change the law. *See Columbus Plastic Products, Inc. v. Rona Plastic Corp.,* 111 F. Supp. 623, 627 (D.N.Y. 1953) (§ 171); *Graham v. John Deere Co. of Kansas City,* 383 U.S. 1, 3-4 (1966) (§ 103). In 1966, the Supreme Court clarified that although patentability ultimately was an issue of law, the section 103 condition lends itself to three factual inquires. *See Graham, supra*, at 17. Importantly, as in *Jennings, supra*, these legal frameworks did not require a primary reference that was basically the same as the claimed design to establish obviousness. Indeed,

previous case law had indicated that a "basically the same" primary reference was not needed to establish obviousness.

In *Smith v. Whitman Saddle*, 148 U.S. 674 (1893), a case concerning whether an accused saddle design infringed upon a design patent for a saddle, the Supreme Court discussed that a design would not be patentable when "[n]othing more was done in this instance (except as hereafter noted) than to put the two halves of these saddles together in the exercise of the ordinary skill of workmen of the trade, and in the way and manner ordinarily done." *Id.* at 681. Since two different halves were brought together, a single primary reference that was "basically the same" as the claimed design arguably did not exist.

In *Knapp v. Will & Baumer*, 273 F. 380 (2nd Cir. 1921), a case involving a candle design patent, the court found the design patent to be unpatentable because it was not an "inventive act" to take "an ordinary coach handle, with a bell shaped tip," change "the column from a round one into a square one," and add "a self-fitting base in accordance with the teachings of the art since 1861." *Id.* at 384-385. There arguably was no primary reference that was basically the same as the accused design. Rather, the prior art was relied upon to show prior forms and common practices.

\*\*\*\*\*\*

6



Image from *Knapp* disclosing the different candle cuts

In *W. Auto Supply Co. v. Am.-National Co.*, 114 F.2d 71 (6th Cir. 1940), the Sixth Circuit found the design patent invalid due to lack of invention. The court explained "[i]f the variation sought to be patented is of such nature that it would naturally occur to one of average skill in the field, it is in reality in potential possession of the public, and to reward it with the monopoly of a patent would be out of harmony with the purpose and intent of the statute." *Id.* at 712. Notably, the court explained that prior art could render the patent invalid both "[w]hen the idea is adapted or derived by analogy from prior usage, or when it is embodied in a design resembling the prior art in general appearance or central theme…." *Id.* Lack of patentability therefore could result even when no primary reference existed.

7

In 1981, the standard for evaluating obvious was clarified to be a designer of ordinary skill rather than an "ordinary intelligent man." *See In re Nalbandian*, 661 F.2d 1214, 1215 (C.C.P.A. 1981). One year later, the court observed in *Rosen*, *supra*, that "the test for obviousness may well bring more art into consideration since we must look to the knowledge of the 'ordinary designer' rather than that of the 'ordinary intelligent man.'" *Id.* at 390. Since the field of potential prior art had been expanded with the universal adoption of the ordinary designer standard, a natural reaction may have been to tighten the requirement for proving obviousness by adding the "basically the same" language to the "something in existence" requirement in *Jennings*.

Regardless of motivation, *Rosen's* requirement simplified the obviousness analysis by limiting an ordinary designer's role to evaluating whether a reference was "basically the same" as the claimed design. This oversimplification proved unwise because it improperly lowered the standard for obtaining a design patent. Indeed, the accuracy of the obviousness determination at times results not only from what a designer of ordinary skill *observes* in the prior art, but also is *taught by* the prior art. A properly developed and defined hypothetical ordinary designer should be able to determine what would be obvious to bring into existence (if not currently in existence) based on the teachings of the prior art and general knowledge of an ordinary designer.

A better approach to obviousness would have been to further develop the ordinary designer standard. The mind of the ordinary designer is the filter through which the obviousness analysis passes and for that reason the accuracy of the result depends upon the principles upon which the ordinary designer standard is built.

2.    Lessons from *Egyptian Goddess v. Swisa*

Abandonment of a rigid test in favor of developing more sophisticated principles related to a hypothetical ordinary observer has met with success in a related area of design patent law. The infringement test from *Gorham v. White*, 81 U.S. 511 (1871) states "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Id.* at 528. The concept of prior art is not expressly mentioned in the *Gorham* test and an easy solution to the problem of how prior art should factor into the analysis proved elusive. Two years after *Rosen* was decided, the Federal Circuit decided *Litton Systems v. Whirlpool Corporation*, 728 F.2d 1423 (Fed. Cir. 1984). In *Litton*, the court addressed the prior art issue by endorsing a "point of novelty" approach where "even though the court compares two items through the eyes of the ordinary observer, it must nevertheless, to find infringement, attribute their similarity to the novelty which distinguishes the patented device from the prior art." *Id.* at 1444.

This separate "point of novelty" test was used for almost twenty-five years. It was revisited when it became apparent the test was overly simplistic and did not work when multiple points of novelty could exist in different combinations of design elements. In such cases, the patentee would identify the point of novelty as an arbitrary combination of design elements that would lead to infringement and the accused infringer would choose an equally arbitrary combination that avoided infringement.  This unworkable situation was resolved by the Federal Circuit in *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665 (Fed Cir. 2008) (en banc).

The solution to the problem was to eliminate the overly restrictive "point of novelty" test and to observe that the patented and accused designs were compared *in light of the prior art by an ordinary observer*. *Id.* at 678. This observation led to further refinement of the ordinary observer standard and further development of more sophisticated principles that more closely tracked how an ordinary observer would compare two designs under the *Gorham* test. *Id.* at 676-677.

3.    The *Rosen* Primary Reference Requirement Should be Eliminated

This Court solved the prior art problem in the infringement context by eliminating the overly simplistic point of novelty test and developing principles related to the ordinary observer. Similarly, this Court should solve the prior art problem in the obviousness context by eliminating the overly simplistic *Rosen*

primary reference requirement and develop legal principles based on the knowledge of an ordinary designer.

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) supports this approach. In *KSR*, the Court stated that the teaching, suggestion, or motivation requirement "captured a helpful insight," *id.* at 418, but "[h]elpful insights, however, need not become rigid and mandatory formulas; and when it is so applied, the TSM test is incompatible with our precedents." *Id.* at 419. Similarly, the primary reference requirement is sometimes a useful tool when considering design patent obviousness. However, when the requirement becomes a rigid tool that excludes other ways that the prior art and knowledge of the ordinary designer can implicitly suggest or teach a claimed design, then the primary reference test becomes incompatible with the approach to obviousness taken by the Supreme Court in *KSR* and *Whitman Saddle.*

In *KSR*, the Court stated "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416. This principle is similar to the pre-*Rosen* principle from *Whitman Saddle* that a design is likely not patentable when known elements are combined together "in the exercise of the ordinary skill of workmen of the trade, and in the way and manner ordinarily done." *KSR* also cautions against using overly restrictive rules as a preventative measure against hindsight bias. An effective alternative is a

11

jury instruction that hindsight bias is improper and that the prior art and what it teaches to an ordinary designer must be compared to the claimed design as a whole.

CONCLUSION

ABPA urges this Court to accept this case en banc to review whether the primary reference requirement of *Rosen* is incompatible with Supreme Court precedent and other pre-*Rosen* precedents, and to determine what principles are appropriate for determining obviousness in the design patent context.

Respectfully submitted,

/s/ Robert G. Oake, Jr.
Robert G. Oake, Jr.
Oake Law Office, PLLC
700 S. Central Expressway, Suite 400
Allen, Texas 75013
Telephone: 214.207.9066
Facsimile: 469.519.5454
rgo@oake.com

Attorney for Amicus Curiae
Automotive Body Parts Association

April 6, 2023

**FORM 30. Certificate of Service**

**Form 30**
**July 2020**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF SERVICE</u>

**Case Number**  2022-1253

**Short Case Caption**  LKQ Corporation, et al v. GM Global Technology Operation

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on _____

by ☐ U.S. Mail  ☐ Hand Delivery  ☐ Email  ☐ Facsimile
☑ Other: <u>CM/ECF</u>

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| All counsel of record | Court's CM/ECF System |
|  |  |
|  |  |
|  |  |
|  |  |

☐  Additional pages attached.

Date: April 6, 2023

Signature:  /s/ Robert G. Oake, Jr.

Name:  Robert G. Oake, Jr.

Save for Filing

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  2022-1253

**Short Case Caption:**  LKQ Corporation, et al v. GM Global Technology Operations LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  2,597  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 04/06/2023

Signature:  /s/ Robert G. Oake, Jr.

Name:  Robert G. Oake, Jr.

Save for Filing